## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| RADLEY BRADFORD, | |
| Plaintiff, | |
| v. | Case No. 4:21-cv-02834 |
| EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION, LLC, | |
| Defendants. | |

## COMPLAINT

**NOW COMES** Radley Bradford ("Plaintiff"), by and through his undersigned counsel, complaining of defendants Equifax Information Services, LLC and TransUnion, LLC (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action seeking redress for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 *et seq*. and defamation.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1337.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because all of the events or omissions giving rise to the claims occurred within this judicial district.

### PARTIES

4.      Radley Bradford ("Plaintiff") is a natural person over 18-years-of-age that resides in Houston, Texas.

5.      Defendant Equifax Information Services, LLC ("Equifax") is a prominent credit reporting agency. Equifax maintains its principal place of business in Atlanta, Georgia.

6.     Defendant Trans Union LLC ("Trans Union") is a prominent credit reporting agency. Trans Union maintains its principal place of business in Chicago, Illinois.

## **FACTUAL ALLEGATIONS**

7.     At some point, Plaintiff applied for and received an auto loan from Capital One Auto Finance ("Capital One").

8.     Additionally, at some point, Plaintiff applied for and received a line of credit with Discover Financial ("Discover").

9.     Plaintiff also applied for and received a Synchrony Bank Care Credit card ("Synchrony").

10.     Due to unforeseen circumstances, Plaintiff fell behind on his payments to Capital One, Discover, and Synchrony.

11.     In an attempt to resolve the default, Plaintiff contacted Capital One, Discover, and Synchrony to make payment arrangements.

12.     Specifically, in March 2021, Plaintiff contacted Capital One and requested an accommodation due to the Covid-19 pandemic, which was granted under the CARES Act.

13.     Despite Plaintiff's last payment to Capital One being made in March 2020, Capital One continued to report the debt as "pays as agreed" until Plaintiff initiated a lawsuit against it.

14.     Then, in August 2020, despite the accommodation granted under the CARES Act, Capital One changed his payment history to "delinquent" on payments.

15.     Similarly, Plaintiff contacted Discover and requested an accommodation due to the Covid-19 pandemic, which was also granted under the CARES Act.

16.     Despite this accommodation, Discover started to report to the credit bureaus that Plaintiff was "delinquent" on payments.

17.     Unfortunately, Capital One and Discover eventually charged off Plaintiff's remaining balance.

18.     Additionally, Plaintiff contacted Synchrony and requested an accommodation due to the Covid-19 pandemic, which was granted under the CARES Act.

19.     Despite this accommodation, Synchrony started reporting Plaintiff's account as "past due."

20.     On or around December 2020, Plaintiff noticed that both Capital One and Discover were reporting to Equifax and TransUnion that the accounts were charged off.

21.     Plaintiff also noticed that Synchrony was reporting his balance as "past due."

22.     The Capital One, Discover, and Synchrony accounts were reporting derogatorily on Plaintiff's credit reports and were significantly harming Plaintiff's credit score.

**Plaintiff's Credit Reporting Disputes Regarding Capital One**

23.     Concerned with the inaccurate information on his credit reports, Plaintiff took immediate action to remove the derogatory remarks from his credit reports.

24.     Specifically, on December 2, 2020, Plaintiff submitted a credit dispute to Equifax challenging the charge off on his Capital One debt under confirmation number 0337043177.

25.     Plaintiff's dispute explained that (1) Plaintiff contacted Capital One in March 2021 and received an accommodation under the CARES Act; (2) according to that accommodation, his payments were not late; and (3) the account should not be considered charged-off.

26.     Upon information and belief, Equifax transmitted Plaintiff's dispute to Capital One within five days of Equifax's receipt of Plaintiff's dispute. *See* 15 U.S.C. §1681i(a)(2).

27.     Plaintiff then received notice that Equifax's investigation was complete on December 22, 2020.

28.     However, Plaintiff never received any written communication regarding the results of this investigation.

29.     Frustrated with the lack of response to his dispute, Plaintiff filed another dispute with Equifax regarding the Capital One account on December 27, 2020, under confirmation number 0362004225.

30.     Upon information and belief, Equifax transmitted Plaintiff's dispute to Capital One within five days of Equifax's receipt of Plaintiff's dispute. *See* 15 U.S.C. §1681i(a)(2).

31.     This time, Equifax completed the investigation in only 4 days, on December 31, 2020.

32.     Again, Plaintiff never received any written communication regarding the results of his dispute on the Capital One account.

33.     Moreover, Equifax's behavior in twice taking only several days to complete an investigation into the Capital One account suggests that it did not perform a "reasonable investigation" as required by the FCRA.

**Plaintiff's Credit Reporting Dispute Regarding Discover**

34.     On December 2, 2020, Plaintiff submitted a dispute to TransUnion under confirmation number 0337043177 challenging the inaccurate information on his credit report regarding the Discover account.

35.     Plaintiff's dispute explained that (1) Plaintiff contacted Discover and received an accommodation under the CARES Act; (2) according to that accommodation, his payments were not late; and (3) the account should not be considered charged-off.

36.     Upon information and belief, TransUnion transmitted Plaintiff's dispute to Discover within five days of TransUnion's receipt of Plaintiff's dispute. *See* 15 U.S.C. §1681i(a)(2).

37.     Plaintiff then received notice that TransUnion's investigation was complete shortly thereafter.

38.     However, Plaintiff never received any written communication regarding the results of this investigation.

**Plaintiff's Credit Reporting Dispute Regarding Synchrony**

39.     On December 25, 2020, Plaintiff submitted a dispute to TransUnion under confirmation number 388320325 challenging the inaccurate information on his credit report regarding the Synchrony account.

40.     Plaintiff's dispute explained that (1) Plaintiff contacted Synchrony and received an accommodation under the CARES Act; (2) according to that accommodation, his payments were not late; and (3) the account should not be considered past due.

41.     Upon information and belief, TransUnion transmitted Plaintiff's dispute to Synchrony within five days of TransUnion's receipt of Plaintiff's dispute. *See* 15 U.S.C. §1681i(a)(2).

42.     Plaintiff then received notice that TransUnion's investigation was complete on December 30, 2020.

43.     However, Plaintiff never received any written communication regarding the results of this investigation.

**<u>DAMAGES</u>**

44.     Plaintiff has worked hard to build and maintain a good credit history.

45.     The inaccurate reporting of the Capital One, Discovery, and Synchrony accounts have devastated Plaintiff's credit score.

46.     The inaccurate reporting of these accounts has destroyed Plaintiff's creditworthiness because it creates the false impression that Plaintiff is in default on the accounts, thus rendering Plaintiff a high-risk consumer and impeding his ability to obtain credit.

47.     Defendants' reckless inaccurate reporting of the accounts and inquiries has frustrated Plaintiff's ability to control his credit score and his ability to benefit from the credit history he has built over the years.

48.     As a result of Defendants' conduct, Plaintiff has suffered significant damages, including: increased cost of credit; humiliation; loss of time disputing the inaccurate reporting; time expended monitoring his credit files and sending credit disputes (hundreds of hours); mental anguish; emotional distress; lack of sleep; and anxiety.

49.     Moreover, Defendants' conduct has resulted in monetary damages, including the costs of mailing disputes, purchasing credit reports, and subscribing to credit monitoring services.

50.     Plaintiff did not file this action as a knee-jerk reaction to a perceived harm; rather, Plaintiff's financial health has been devastated as a result of Defendant's collective reckless conduct.

51.     Plaintiff has literally exhausted all efforts short of judicial action to compel Defendants to remove the inaccurate information regarding these accounts from his credit reports.

52.      Due to Defendants' repeated refusal to remove inaccurate information regarding the accounts from Plaintiff's credit reports, Plaintiff was forced to initiate the instant action to compel the same.

6

## COUNT I – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)

53.     Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

54.     Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

55.     Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

56.     At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

57.     At all times relevant, Plaintiff was a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

58.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

59.     The FCRA requires the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

60.     If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the disputed information within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

61.     Plaintiff provided Equifax with all relevant information and documentation in his disputes to support his contention that the disputed accounts were reporting inaccurately.

62.     A cursory review of the evidence submitted by Plaintiff would have confirmed that the disputed accounts were reporting inaccurately.

63.     Equifax failed to conduct a meaningful investigation into Plaintiff's disputes. Instead, it continued to blindly report the false information provided to it by Capital One.

64.     Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished concerning Plaintiff.

65.     Equifax repeatedly distributed patently false and materially misleading consumer reports concerning Plaintiff to third parties.

66.     Equifax failed to follow reasonable procedures to assure maximum possible accuracy by repeatedly ignoring the evidence provided by Plaintiff and blindly accepting erroneous information furnished to it by Capital One as accurate.

67.     Had Equifax followed reasonable procedures to assure maximum possibly accuracy, it would have reviewed the disputes and evidence submitted by Plaintiff and promptly discovered that the disputed accounts were reporting inaccurately. Instead, Equifax repeatedly accepted erroneous information as true and continued the reporting of the erroneous information pertaining to the disputed accounts and inquiries.

68.     Equifax should have implemented procedures and safeguards to prevent the repeated reporting of inaccurate accounts.

69.     Equifax violated 15 U.S.C. §1681i(a)(1) by failing to (1) conduct a reasonable investigation into each of Plaintiff's disputes and (2) update the information on Plaintiff's credit files.

70.     Had Equifax conducted a reasonable investigation into Plaintiff's valid disputes, it would have promptly determined that the disputed accounts were reporting incorrectly.

71.     Equifax took no meaningful action to determine whether the disputed accounts and inquiries were correct and blindly reported the same with no regard to the accuracy of its reporting.

72.     At very minimum, Equifax should have requested that Capital One provide proof that its reporting was accurate. Instead, Equifax continued to recklessly report false and unreliable information regarding the account.

73.     Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to Equifax. Upon information and belief, Equifax may have failed to forward all relevant information provided by Plaintiff to Equifax.

74.      Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the account.

75.     Equifax violated 15 U.S.C. §1681i(a)(5) by failing to modify the accounts that were the subject of Plaintiff's disputes after Plaintiff submitted compelling evidence that the disputed accounts and inquiries were reporting inaccurately.

76.     Equifax had actual knowledge that the erroneous reporting of the accounts would have a significant adverse effect on Plaintiff's credit worthiness and ability to obtain credit.

77.     Despite having actual knowledge that Plaintiff's credit files contained erroneous information, Equifax readily distributed Plaintiff's inaccurate and misleading credit reports to one or more third parties, thereby misrepresenting facts about Plaintiff and Plaintiff's creditworthiness.

78.     By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with a reckless disregard of its duty to report accurate and complete consumer credit information.

79.     It is Equifax's regular business practice to blindly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

80.     Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its mistreatment of Plaintiff.

81.     Equifax has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own convenience above its grave responsibility to report accurate consumer data.

82.     As stated above, Plaintiff was significantly harmed by Equifax's conduct.

**WHEREFORE**, Plaintiff, RADLEY BRADFORD, prays for the following relief:

A.  A finding that Equifax's conduct as set forth herein violated the FCRA;

B.  An Order enjoining Equifax from reporting the inaccurate accounts and inquiries;

C.  An award of compensatory damages to Plaintiff to be determined by the jury;

D.  An award of statutory damages of $1,000.00 for each violation of the FCRA;

E.  An award of punitive damages to be determined by the jury; and

F.  An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

G.  Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)

83.     Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

84.     Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

85.     Trans Union is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

86.     At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

87.     At all times relevant, Plaintiff was a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

88.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

89.     The FCRA requires the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

90.     If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the disputed information within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

91.     Plaintiff provided Trans Union with all relevant information and documentation in his disputes to support his contention that the disputed accounts were reporting inaccurately.

92.     A cursory review of the evidence submitted by Plaintiff would have confirmed that the disputed accounts and inquiries were reporting inaccurately.

93.     Trans Union failed to conduct a meaningful investigation into Plaintiff's disputes. Instead, it continued to blindly report the false information provided to it by Discover and Synchrony.

94.     Trans Union violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished concerning Plaintiff.

95.     Trans Union repeatedly distributed patently false and materially misleading consumer reports concerning Plaintiff to third parties.

96.     Trans Union failed to follow reasonable procedures to assure maximum possible accuracy by repeatedly ignoring the evidence provided by Plaintiff and blindly accepting erroneous information furnished to it by Discover and Synchrony as accurate.

97.     Had Trans Union followed reasonable procedures to assure maximum possible accuracy, it would have reviewed the disputes and evidence submitted by Plaintiff and promptly discovered that the disputed accounts were reporting inaccurately. Instead, Trans Union repeatedly accepted erroneous information as true and continued the reporting of the erroneous information pertaining to the disputed accounts.

98.     Trans Union should have implemented procedures and safeguards to prevent the repeated reporting of inaccurate information regarding the accounts.

99.     Trans Union violated 15 U.S.C. §1681i(a)(1) by failing to (1) conduct a reasonable investigation into each of Plaintiff's disputes and (2) modify the accounts to report accurately on Plaintiff's credit files.

100.    Had Trans Union conducted a reasonable investigation into Plaintiff's valid disputes, it would have promptly determined that the disputed accounts were reporting incorrectly.

101.    Trans Union took no meaningful action to determine whether the disputed accounts and inquiries were reporting incorrectly and blindly reported the same with no regard to their accuracy.

102.    At very minimum, Trans Union should have requested that Discover and Synchrony provide proof that their reporting was accurate. Instead, Trans Union continued to recklessly report false and unreliable information regarding the accounts.

103.    Trans Union violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to Discover and Synchrony. Upon information and belief, Trans Union may have failed to forward all relevant information provided by Plaintiff to Discover and Synchrony.

104.    Trans Union violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff regarding the disputed accounts.

105.    Trans Union violated 15 U.S.C. §1681i(a)(5) by failing to modify the disputed accounts that were the subject of Plaintiff's disputes after Plaintiff submitted compelling evidence that the disputed accounts and inquiries were reporting inaccurately.

106.    Trans Union had actual knowledge that the erroneous reporting of the disputed accounts would have a significant adverse effect on Plaintiff's credit worthiness and ability to obtain credit.

107.    Despite having actual knowledge that Plaintiff's credit files contained erroneous information, Trans Union readily distributed Plaintiff's inaccurate and misleading credit reports to one or more third parties, thereby misrepresenting facts about Plaintiff and Plaintiff's creditworthiness.

108.    By deviating from the standards established by the credit reporting industry and the FCRA, Trans Union acted with a reckless disregard of its duty to report accurate and complete consumer credit information.

109.     It is Trans Union's regular business practice to blindly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

110.    Trans Union's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its mistreatment of Plaintiff.

111.    Trans Union has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own convenience above its grave responsibility to report accurate consumer data.

112.     As stated above, Plaintiff was significantly harmed by Trans Union's conduct.

**WHEREFORE**, Plaintiff, RADLEY  BRADFORD, prays for the following relief:

A.  A finding that Trans Union's conduct as set forth herein violated the FCRA;

B.  An Order enjoining Trans Union from reporting the inaccurate accounts and inquiries;

C.  An award of compensatory damages to Plaintiff to be determined by the jury;

D.  An award of statutory damages of $1,000.00 for each violation of the FCRA;

E.  An award of punitive damages to be determined by the jury; and

F.  An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

G.  Awarding any other relief as this Honorable Court deems just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: August 30, 2021                          Respectfully Submitted,

                                                /s/ *Jennifer Ann McLaughlin*

                                                Jennifer Ann McLaughlin, Esq.
                                                *Counsel for Plaintiff*
                                                Sulaiman Law Group, Ltd.
                                                2500 S. Highland Ave., Ste. 200
                                                Lombard, IL 60148
                                                Phone: (630) 581-5450
                                                jmclaughlin@sulaimanlaw.com